UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

EMILY J. T.,[1]

                              Plaintiff,                    5:22-cv-0084 (BKS)

v.

KILOLO KIJAKAZI, Acting Commissioner of Social
Security,[2]

                              Defendant.

---

**Appearances:**

*For Plaintiff:*
Howard D. Olinsky
Olinsky Law Group
250 South Clinton Street, Suite 210
Syracuse, NY 13202

*For Defendant:*
Carla B. Freedman
United States Attorney
Hugh Dun Rappaport
Special Assistant United States Attorney
Social Security Administration
J.F.K Federal Building, Room 625
Boston, MA 02203

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

Plaintiff Emily J. T. filed this action under 42 U.S.C. § 405(g) seeking review of a

decision by the Commissioner of Social Security (the "Commissioner") denying Plaintiff's

---

[1] In accordance with the local practice of this Court, Plaintiff's last name has been abbreviated to protect her privacy.

[2] Pursuant to Fed. R. Civ. P. 25(d), the current Acting Commissioner of Social Security, Kilolo Kijakazi, has been substituted in place of her predecessor, Commissioner Andrew Saul.

application for Social Security Disability Insurance ("SSDI") Benefits. (Dkt. No. 1). The parties'

briefs, filed in accordance with N.D.N.Y. General Order 18, are presently before the Court. (Dkt.

Nos. 9, 11). After carefully reviewing the Administrative Record,[3] and considering the parties'

arguments, the Court remands this matter for further administrative proceedings.

## II.     BACKGROUND[4]

### A.      Procedural History

Plaintiff applied for SSDI benefits on October 13, 2019, alleging disability, as relevant

here, due to Crohn's disease, with an alleged onset date of March 6, 2019. (R. 171). Plaintiff's

claim was denied initially on April 1, 2020 and again upon reconsideration on September 10,

2020. (R. 91, 102). Plaintiff appealed that determination, and a hearing was held before

Administrative Law Judge ("ALJ") David Romeo on February 26, 2021, at which Plaintiff was

represented by an attorney. (R. 31–65). On March 8, 2021, the ALJ issued a decision finding that

Plaintiff was not disabled within the meaning of the Social Security Act. (R. 14–25). Plaintiff

filed a request for review of that decision with the Appeals Council, which denied review on

November 30, 2021. (R. 1–6). Plaintiff commenced this action on January 31, 2022. (Dkt. No.

1).

### B.      Plaintiff's Background and Hearing Testimony

Plaintiff was nineteen years old at the alleged onset of her disability and twenty-one years

old at the time of the ALJ's hearing in February 2021. (R. 36). Plaintiff graduated from high

school and has past work as a cashier, receptionist, and home attendant. (R. 37–40). Plaintiff

stopped working on March 6, 2019 because she "was not released to go back to work" and her

---

[3] The Court cites to the Bates numbering in the Administrative Record, (Dkt. No. 6), as "R." throughout this opinion, rather than to the page numbers assigned by the CM/ECF system.

[4] Because Plaintiff's arguments relate solely to Crohn's disease, the Court limits its recitation of the facts to those needed for background and those relevant to Plaintiff's Crohn's disease and related symptoms.

"Crohn's had gotten progressively worse." (R. 41). Plaintiff lives with her parents, husband, and daughter. (R. 36).

Plaintiff has had "basically, a constant flare up since" she received the Crohn's diagnosis at age sixteen. (R. 50). Plaintiff testified that at present, she has diarrhea "constantly," vomits, and spends most of the day "in the bathroom." (R. 42). Plaintiff testified that she goes to the bathroom "[a]bout two to three times per hour" and is in the bathroom for "five to ten minutes" each time, but "[s]ometimes longer." (R. 45). Plaintiff "has extreme stomach pain—abdominal pain," is "bleeding constantly" and is "very tired all the time." (R. 42).

At the time of the hearing, Plaintiff was on Stelara, which is an injection she receives every eight weeks. (R. 46). The first dose of Stelara worked but, after "a couple weeks," Plaintiff felt like she "went back to where [she] was" and that she has "been there since." (R. 46). Plaintiff's medical providers are "trying to increase it possibly to see if that works." (R. 45–46). Plaintiff also takes steroids on a daily basis. (R. 46).

Plaintiff has no household chores—her mother helps with "everything" and helps take care of Plaintiff's daughter. (R. 54, 61). On "bad days," Plaintiff has to remain in bed, leaving only to use the bathroom; she cannot eat or drink and is "throwing up the whole day." (R. 57). On "better days" she is able to "sit in the living room and play with [her] daughter a little bit." (R. 57). Plaintiff drives approximately twice each week—to doctor's appointments or to the grocery store. (R. 37).

At the hearing, Plaintiff's attorney asked a vocational expert whether an individual who could perform light work, but required "ready access to a restroom but the needs to use the restroom can be accommodated by the 15-minute morning and afternoon breaks, 30-minute lunch period, and two additional five-minute breaks in an eight-hour workday," could perform

past relevant work, or other work. (R. 60–61). The vocational expert responded that such an

individual could perform past work as a cashier or receptionist, and other work as a price marker,

storage facility rental clerk, and routing clerk. (R. 61). The ALJ asked the vocational expert

whether an individual with the light work limitations, who would, in addition "need to use the

restroom at will for up to 10 minutes at a time—and this would range from five to 10 times per

day," could perform "any past or other work?" (R. 62). The vocational expert responded, "[n]o."

(R. 62). The vocational expert further testified that if such an individual were off task more than

ten percent of the workday, all work would be precluded. (R. 63).

### C.      Medical Evidence

#### 1.      Crohn's Disease

In late 2015, at the age of sixteen, Plaintiff began experiencing diarrhea, abdominal pain,

nausea, and weight loss. (R. 280). Marcus Rivera, M.D., a pediatric gastroenterologist, ordered

an upper endoscopy and colonoscopy. (R. 280–81). The colonoscopy showed hemorrhagic,

inflamed, and ulcerated mucosa in the colon. (R. 281). In March or April 2016, Dr. Rivera

diagnosed Crohn's disease. (R. 285–89). Plaintiff's initial treatment was prednisone. (R. 284,

286, 287). Dr. Rivera's May 16, 2016 progress note reflects that Plaintiff was suffering

generalized abdominal pain that was worse in the right lower quadrant. (R. 296). Dr. Rivera

noted that although Plaintiff was "feeling better," he was "worried about persistent inflammation

and potential stricturing disease of the distal small bowel." (R. 297). Dr. Rivera continued

Plaintiff's prescriptions for prednisone and Zofran. (R. 296–97). Dr. Rivera's August 17, 2016

progress note states that Plaintiff's abdominal pain was "mild" and she had two bowel

movements "on the worst day in past 7 days." (R. 298). Dr. Rivera assessed Plaintiff's "current

disease status" as "mild." (R. 299).

On or about April 11, 2018, Plaintiff began seeing Robert Pavelock, M.D., a gastroenterologist at Digestive Disease Med. of CNY. (R. 345, 376). Plaintiff reported that she "continues to have symptomology going to the bathroom 'all day,' having loose bowel movements," and vomiting daily. (R. 345, 348). An April 11, 2018 colonoscopy showed "Crohn disease, moderate activity at least." (R. 379). Dr. Pavelock recommended a prednisone taper and that Plaintiff consider "starting a biologic such as Humira or Remicade." (R. 379). A progress note from Dr. Pavelock's office dated May 18, 2018, states that Plaintiff reported her bowel movements were regular and denied nausea or abdominal pain. (R. 849). On June 26, 2018, Dr. Pavelock prescribed Humira injections. (R. 358). On July 18, 2018, Plaintiff reported to Dr. Pavelock's office that her bowels were regular and that she was tolerating Humira. (R. 359).

On March 8, 2019, Plaintiff was seen by a nurse practitioner at Dr. Pavelock's office and reported that "4 to 5 days ago she started having problems, she has been having 9 to 10 bowel movements a day," and that she had "nausea and vomiting 3 to 4 x a day for the last 4 days." (R. 322). Noting that Plaintiff was "pregnant at 13 weeks," the nurse practitioner directed Plaintiff to "[h]old Humira until seen by Dr. Pavelock," and asked Plaintiff to contact her OB/GYN for evaluation. (R. 323). Dr. Pavelock's March 13, 2019 treatment note states that he advised Plaintiff to restart Humira as it was "most important to keep Crohns under control during pregnancy." (R. 327). On March 26, 2019, Plaintiff was seen by a nurse practitioner at Dr. Pavelock's office "for flair [sic]" but reported "doing better," and that her bowel movements were one to three times per day. (R. 328). A June 5, 2019 progress note from Dr. Pavelock's office reflects that Plaintiff was having bowel movements four to five times per day, and that she was off Humira and tapering steroids. (R. 330–31). A June 26, 2019 progress note from Dr. Pavelock's office shows Plaintiff was tapering steroids but still had "5 stools a day." (R. 332). A

July 2, 2019 progress note from Dr. Pavelock's office reflects that Plaintiff was continuing to taper steroids and was having three bowel movements per day. (R. 334).

On November 21, 2019, Plaintiff was seen by Rayees Nizam, M.D., a gastroenterologist at Associated Gastroenterologists of Central New York. (R. 628). Plaintiff reported "difficulty with diarrhea, weight loss and fever." (R. 628). Plaintiff restarted Humira on November 21, 2019, following her pregnancy, and was continuing to take prednisone. (R. 628). Dr. Nizam noted that Plaintiff's abdomen was soft, with "mild tenderness in the upper right quadrant." (R. 630). On December 5, 2019, Dr. Nizam noted that Plaintiff reported that she continued to have "difficulty with nausea and vomiting" and that she was "averaging up to seven bowel movements a day." (R. 936).

Plaintiff went to the emergency department at Oneida Hospital on December 30, 2019, reporting abdominal pain and a Crohn's flare. (R. 606). Plaintiff stated she was vomiting "six to seven times per day," and was having "about six loose stools per day which is her usual." (R. 606). Plaintiff was admitted to the hospital and discharged on January 1, 2020. (R. 607).

On January 3, 2020, Plaintiff was seen by Dr. Nazim and reported that her abdominal pain had improved significantly "with the onset of therapy with prednisone." (R. 960). Plaintiff stated that she was having "around five bowel movements a day." (R. 960). Plaintiff told Dr. Nizam that she had not taken her most recent dose of Humira "because of the lack of efficacy." (R. 960). Dr. Nizam continued therapy with prednisone and prescribed Stelara. (R. 963). Plaintiff was seen in the Oneida Hospital emergency department on April 1, 2020 for abdominal pain, nausea, vomiting, and diarrhea. (R. 981). Prednisone was prescribed and Plaintiff was discharged with a finding that her symptoms were "likely some aspects of Chron's [sic] flair." (R. 983). On April 15, 2020, Dr. Nazim noted that Plaintiff was experiencing "quite a bit of bowel activity,

averaging around 8 bowel movements a day." (R. 989). Dr. Nazim noted that Plaintiff was on

Stelara and that her next injection was "due in a couple weeks." (R. 989). On May 22, 2020, Dr.

Nazim noted that Plaintiff was "doing quite well from the GI perspective" and that her "bowel

habits have significantly improved she is averaging 2-3 bowel movements a day." (R. 998).

On September 11, 2020, Dr. Pavelock[5] noted that Plaintiff was "[d]oing well," was

having three bowel movements per day, and had no pain. (R. 1444). Dr. Pavelock wrote that

Plaintiff was "[d]oing much better since starting Stelara," but that Plaintiff "[d]oes get some

increased Diarrhea and pain on last week before her Stelara shot." (R. 1444). An October 30,

2020, chart note states that a "CT shows a Crohns Flare" and that Dr. Pavelock instructed

Plaintiff to "go back to 50 mgs of prednisone," and that Plaintiff stated "she does well after

Stelara for about a month." (R. 1446–47 (CT imaging of abdomen and pelvis)). Dr. Pavelock

noted that he planned to "increase Stelara to every 6 weeks." (R. 1446).

A report following a February 8, 2021 colonoscopy by Dr. Pavelock indicated that there

was inflammation, loss of vascularity, serpentine ulcerations, and that Plaintiff's Crohn's disease

and inflammation were "moderate in severity, and when compared to previous examinations, the

findings are worsened." (R. 1524–25).

### 2.      Anemia

Plaintiff also suffers from iron deficiency anemia and was seen regularly at the Oneida

Health Cancer Care Hematology/Oncology office for follow-up and intravenous iron infusions.

(R. 1486–87 (reflecting office visits on July 25, 2019, August 15, 2019, September 30, 2019,

April 23, 2020, July 16, 2020, September 16, 2020, and January 7, 2021)). On September 30,

2019, Plaintiff reported that she was "dealing with a crohn's flair and has had vomiting and

---

[5] It appears Plaintiff returned to Dr. Pavelock's care on or about September 11, 2020. (R. 1444).

diarrhea for a couple of weeks." (R. 1486). Notes from an appointment on April 23, 2020, reflect

that Plaintiff was experiencing "intermittent Crohn's flare symptoms including nausea,

abdominal pain & diarrhea." (R. 1486). Notes from Plaintiff's July 16, 2020, appointment reflect

that Plaintiff was feeling better "but still has chronic diarrhea." (R. 1507). Notes from Plaintiff's

January 7, 2021, appointment indicate that Plaintiff had recently recovered from COVID-19, that

Plaintiff "did have a crohn's flair during the time with COVID[-19]," and that she "continues

with symptoms of crohn's," including "Vomiting. Nausea. Diarrhea." (R. 1487–88).

### D.    Opinion Evidence

#### 1.    State Agency Medical Consultants

On March 16, 2020, after reviewing the documentary evidence, B. Stouter, M.D. opined:

"Based on the evidence in file, clmt's RA and crohns MDI is considered non-severe. Clmt has

full ROM, strength, and overall unremarkable physical exam. Clmt. occasionally has crohn's

flare ups." (R. 71).

On September 9, 2020, V. Baronos, M.D., after reviewing the documentary evidence,

opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds

frequently, stand and/or walk "[a]bout 6 hours in an 8-hour workday," sit "[a]bout 6 hours in an

8-hour workday," could "occasionally" perform postural activities, including climbing,

balancing, and kneeling, and had no other limitations. (R. 86–87).

#### 2.    Dr. Rita Figueroa

Rita Figueroa, M.D. conducted a consultative internal medicine examination of Plaintiff

on February 28, 2020. (R. 483–86). Plaintiff reported to Dr. Figueroa that she experiences

abdominal pain, "has on average ten bowel movements a day," and experiences a lot of nausea

and vomiting. (R. 483). Plaintiff stated she "has been on prednisone on and off," and that she had

tried, inter alia, Remicade and Humira, and was on Entyvio at present. (R. 483). Dr. Figueroa

reported normal findings on examination and noted that Plaintiff's abdomen was "[t]ender above the umbilicus" and "below the lower abdomen," but that "[b]owel sounds were normal" and her "[a]bdomen [was] soft." (R. 485). Dr. Figueroa provided the following medical source statement: "The claimant would need frequent bathroom breaks and arrangements. No other limitations based on today's evaluation." (R. 486).

### E.      The ALJ's Decision Denying Benefits

ALJ Romeo issued a decision dated March 8, 2021 and determined that Plaintiff was not disabled under the Social Security Act. (R. 14–25). After finding, as an initial matter, that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2021, (R. 16), the ALJ used the required five-step evaluation process to reach his conclusion.[6]

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since her alleged onset date of March 6, 2019. (R. 17). At step two, the ALJ determined that Plaintiff had the following severe impairments: "Crohn's disease, anemia, and polyarticular inflammatory arthritis." (R. 17 (citing 20 C.F.R. § 404.1520(c))). The ALJ noted evidence in the record, of gastroesophageal reflux disease, gallstones, hepatomegaly, and adjustment disorder with anxiety and depression, but found that these impairments were not severe. (R. 17).

---

[6] Under the five-step analysis for evaluating disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a severe impairment, (3) that the impairment is not one listed in Appendix 1 of the regulations that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, the Commissioner must find [her] disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)) (internal quotation marks and punctuation omitted). "The claimant bears the burden of proving his or her case at steps one through four," while the Commissioner bears the burden at the final step. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 18 (citing 20 C.F.R. § 404.1520(d)). [7]

The ALJ then proceeded to determine Plaintiff's residual functional capacity ("RFC")[8] and found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally operate foot controls. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. The claimant can frequently reach, handle, finger, and feel with both upper extremities. She can never be exposed to high, exposed places or moving mechanical parts. The claimant can tolerate occasional changes in a work setting. She requires ready access to a restroom, but the need to use the restroom can be accommodated by the 15 minute morning and afternoon breaks and the 30 minute lunch period and two additional 5 minute bathroom breaks in an 8 hour workday.

(R. 19). In making this determination, the ALJ followed a two-step process by which he first determined "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms," and then evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." (R. 19). The ALJ observed that Plaintiff alleged disability due to symptoms and impairments that include Crohn's disease and rheumatoid arthritis, including "significant difficulty with activities of daily living, particularly in lifting, standing, walking, kneeling, and using her hands." (R. 19). Applying this two-step process, the ALJ found that while the "claimant's medically determinable

---

[7] Plaintiff does not challenge the ALJ's findings at steps one, two, or three.

[8] The regulations define residual functional capacity as "the most [a claimant] can still do despite" her limitations. 20 C.F.R. § 404.1545(a)(1).

impairments could reasonably be expected to cause the . . . alleged symptoms," "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 19–20). In coming to this determination, the ALJ first summarized Plaintiff's reports and the objective medical evidence in the record. (R. 20–22).

The ALJ then considered the medical opinions in the record from, as relevant here, Drs. Stouter and Baronos, state agency medical consultants, and Dr. Figueroa, a consultative examiner. (R. 21–22). The ALJ found Dr. Stouter's opinion—that Plaintiff did not have any severe physical impairments—was not persuasive because "it is not consistent with the evidence in the record," explaining that "claimant's diagnosed Crohn's creates abdominal pain and other symptoms which in combination with her polyarthritis supports a limitation to light exertional work, manipulative limitations, and Plaintiff's "diagnosed Crohn's disease also supports the requirement to take additional bathroom breaks." (R. 22). The ALJ found Dr. Baronos's opinion, which principally concerned Plaintiff's exertional limitations, persuasive "as it is consistent with the evidence in the medical record" and "the examiner has knowledge of how the Social Security disability program works." (R. 22). The ALJ added, however, that Plaintiff's "diagnosed Crohn's disease . . . supports the requirement to take additional bathroom breaks." (R. 22). Finally, the ALJ found Dr. Figueroa's opinion— that Plaintiff would "need frequent bathroom breaks and arrangements"—was not "persuasive based upon subsequent treatment notes," which indicated that Plaintiff's "Crohn's symptoms were alleviated with medication to a significant extent." (R. 22).

At step four, relying on the testimony of a vocational expert, the ALJ determined that Plaintiff was capable of performing past relevant work as a home attendant, cashier, and

receptionist, (R. 23), and that there was other work Plaintiff could perform, including work as a

price marker, storage facility rental clerks, or routing clerk, (R. 24). Accordingly, the ALJ found

Plaintiff "not disabled." (R. 30–31).

### III.      STANDARD OF REVIEW

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does

not determine de novo whether Plaintiff is disabled. Rather, the Court must review the

administrative record to determine whether "there is substantial evidence, considering the record

as a whole, to support the Commissioner's decision and if the correct legal standards have been

applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence is 'more than

a mere scintilla.' It means such *relevant* evidence as a *reasonable* mind might accept as adequate

to support a conclusion." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir.

2012) (per curiam) (quoting *Moran*, 569 F.3d at 112). The substantial evidence standard is "very

deferential," and the Court may reject the facts that the ALJ found "only if a reasonable

factfinder would *have to conclude otherwise*." *Id.* at 448 (quoting *Warren v. Shalala*, 29 F.3d

1287, 1290 (8th Cir. 1994)). The Court, however, must also determine whether the ALJ applied

the correct legal standard. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "'Where an error of

law has been made that might have affected the disposition of the case, this court cannot fulfill

its statutory and constitutional duty to review the decision of the administrative agency by simply

deferring to the factual findings of the ALJ.'" *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.

1984) (quoting *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)). The Court

reviews de novo whether the correct legal principles were applied and whether the legal

conclusions made by the ALJ were based on those principles. *See id.*; *see also Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987).

**IV.   DISCUSSION**

Focusing on the aspect of the RFC determination that addressed accommodating Plaintiff's need to use the restroom, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ committed legal error by failing to consider the supportability factor in evaluating Dr. Figueroa's opinion and that the ALJ's finding with respect to the consistency factor in evaluating Dr. Figueroa's opinion was not supported by substantial evidence. (*See generally* Dkt. No. 9). The Commissioner responds that because, as the ALJ explained, Dr. Figueroa's opinion conflicts with "Plaintiff's well documented improvement" and was not supported by Dr. Figueroa's "largely normal exam," the ALJ's RFC determination is supported by substantial evidence and the finding of no disability should be affirmed. (Dkt. No. 11, at 2).

**A.     Supportability Factor**

Under the applicable regulations, the Commissioner must consider medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. § 404.1520c(a)–(c). The ALJ is required to "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." 20 C.F.R. § 404.1520c(a) and (b)(1). The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 404.1520c(b)(2).

With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R.

13

§ 404.1520c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

An ALJ's failure to explain the supportability and consistency of the medical opinions in the record is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *see also Loucks v. Kijakazi*, No. 21-cv-1749, 2022 WL 2189293, at *2, 2022 U.S. App. LEXIS 16829 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, "if 'a searching review of the record assures [the court] that the substance of the [regulation] was not traversed,'" the court may affirm the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2, 2022 U.S. App. LEXIS 16829 (quoting *Estrella*, 925 F.3d at 96).

Dr. Figueroa opined that Plaintiff "would need frequent bathroom breaks and arrangements." (R. 486). The ALJ explained that he found this opinion was not "persuasive based upon subsequent treatment notes," which indicated that Plaintiff's "Crohn's symptoms were alleviated with medication to a significant extent." (R. 22). While this explanations shows that the ALJ considered how consistent Dr. Figueroa's opinion was with the other evidence in the record regarding Plaintiff's Crohn's disease, it does not, as the Commissioner acknowledges, (Dkt. No. 11, at 9), reflect any consideration of the supportability factor.

14

To satisfy the supportability factor, an ALJ must consider whether the medical source

supported his or her opinion with "objective medical evidence and supporting explanations." 20

C.F.R. § 404.1520c(c)(1). Although the ALJ did not discuss supportability in the paragraph he

devoted to addressing the persuasiveness of Dr. Figueroa's opinion, in evaluating Plaintiff's

symptoms, and the extent to which they could "reasonably be accepted as consistent with the

objective medical evidence and other evidence," the ALJ observed that "[d]espite" Plaintiff's

report to Dr. Figueroa that she was experiencing ten bowel movements per day, Dr. Figueroa

noted on examination "that the claimant's bowel sounds were normal and her abdomen was

soft." (R. 21). From this, it is apparent that the ALJ considered the supportability of Dr.

Figueroa's opinion and found it lacking because it was based on Plaintiff's own report about her

bowel movement frequency and was not based on any finding on examination. Therefore, as the

Court can glean the ALJ's consideration of the supportability of Dr. Figueroa's opinion from his

analysis of the medical evidence, the Court concludes that the substance of the regulation was

not traversed and the ALJ's procedural error in omitting an express reference to supportability is

harmless.[9] *See Ricky L. v. Comm'r Soc. Sec.*, No. 20-cv-7102, 2022 WL 2306965, at *4, 2022

U.S. Dist. LEXIS 113151 (W.D.N.Y. June 27, 2022) ("[I]insofar as the Court can adequately

'glean' how the ALJ weighed the consistency and supportability factors for Dr. Sandler's

opinion, the Court finds the ALJ's procedural error harmless as 'the substance of the [regulation]

was not traversed.'" (first quoting *Brenda W. v. Comm'r of Soc. Sec.*, No. 20-CV-1056, 2022

WL 446462, at *5 n.5, 2022 U.S. Dist. LEXIS 26451 (W.D.N.Y. Feb. 14, 2022); and then

quoting *Loucks*, 2022 WL 2189293, at *2, 2022 U.S. App. LEXIS 16829)); *see also Mongeur v.*

*Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to

---

[9] Plaintiff makes no argument regarding substantial evidence in connection with the supportability factor.

glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of

testimony presented to him or have explained why he considered particular evidence

unpersuasive or insufficient to lead him to a conclusion of disability.") (citation omitted).

Accordingly, for these reasons, the Court finds the ALJ's failure to expressly articulate the

supportability factor does not require remand.

### B.      Consistency Factor

Plaintiff next argues that although the ALJ *did* consider the consistency factor in

evaluating Dr. Figueroa's opinion, (1) the ALJ committed legal error by failing to identify the

"subsequent treatment notes" with which Dr. Figueroa's opinion was purportedly inconsistent,

and (2) the ALJ's determination that that Dr. Figueroa's opinion was inconsistent with

"subsequent treatment notes" is not supported by substantial evidence. (Dkt. No. 9, at 15–18).

Even assuming the ALJ's decision sufficiently identifies the "subsequent treatment notes" with

which Dr. Figueroa's opinion was inconsistent, because the ALJ's determination relies on a

factual error, the Court cannot find the ALJ's evaluation of the persuasiveness of Dr. Figueroa's

opinion to be supported by substantial evidence.

Prior to addressing the persuasiveness of the medical opinions, the ALJ laid out, in

chronological order, from 2019 to 2021, the medical evidence documenting Plaintiff's Crohn-

related symptoms and treatment, including Dr. Figueroa's February 2020 consultative

examination, and the examinations and treatments that post-dated Dr. Figueroa's opinion. (R.

20–21). Thus, although the ALJ did not include specific cites to the "subsequent treatment notes"

on which he based his inconsistency finding in the paragraph discussing the persuasiveness of

Dr. Figueroa's opinion, the manner in which the ALJ laid out the medical evidence makes the

treatment notes readily identifiable. The ALJ recounted, for example, that Plaintiff reported

"having 8 bowel movements per day" in April 2020, (R. 21 (citing R. 989 (Dr. Nizam's April 15,

16

2020 progress note))), but that in May 2020, Plaintiff's medical provider noted "significant improvement with stelara injection" and that Plaintiff was "down to 2-3 bowel movements per day," (R. 21 (citing R. 1011 (Dr. Nizam's May 22, 2020 progress note))), and that she continued to do well into September 2020, with "only 3 bowel movements per day," (R. 21 (citing R. 1444–54 (Dr. Pavelock's September 11, 2020 progress note))), and that in January 2021, a medical provider "noted no nausea, vomiting or diarrhea," (R. 21 (citing R. 1486–90 (Hematology/Oncology January 7, 2021 progress note))). However, this last finding appears to be factually erroneous: the January 7, 2021 progress note from the Hematology/Oncology office affirmatively states: "Vomiting. Nausea. Diarrhea.," and that Plaintiff was "having a crohn's flair."[10] (R. 1488; *see also* R. 1487 (noting in narrative that Plaintiff reported that "she only eats once a day and then usually vomits afterward," "[s]he did have a crohn's flair during the time with COVID[-19]," and that although she had recovered from COVID-19, "she continues with symptoms of crohn's.")). Thus, even assuming the ALJ's failure to cite the "subsequent treatment notes" he relied on in evaluating the consistency of Dr. Figueroa's opinion does not constitute procedural error, the Court must consider whether this factual error requires remand.

A factual "error ordinarily requires remand to the ALJ for consideration . . . at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). "Remand is unnecessary, however, '[w]here application of the correct legal standard could lead to only one conclusion.'" *Id.* (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)). In view of the ALJ's apparent factual error, the Court cannot say the ALJ's conclusion that subsequent

---

[10] Although neither party identified this factual error, in her brief, Plaintiff specifically refers to the documented Crohn's flare on January 7, 2021. (Dkt. No. 9, at 9).

treatment notes showed that Plaintiff's "Crohn's symptoms were alleviated with medication to a significant extent," (R. 22), is supported by substantial evidence. Without the January 2021 evidence of improved Crohn's symptoms, the evidence that medication alleviated Plaintiff's symptoms consists of the progress notes from May 2020 and September 2020, indicating that Plaintiff's symptoms were reduced to 2–3 bowel movements per day during that four-month period. The January 7, 2021 progress note from the Hematology/Oncology office is significantly more favorable to Plaintiff than a note stating "no nausea, vomiting, or diarrhea" because it suggests that (1) while the medication may have improved her Crohn's symptoms temporarily, it did not work long term, as the ALJ had inferred, and (2) Plaintiff's Crohn's symptoms, including the need to use the bathroom frequently, had returned. This apparent factual error implicates not only the ALJ's evaluation of the consistency of Dr. Figueroa's opinion and Plaintiff's subjective reports of disabling symptoms, (*see*, *e.g.*, R. 45 (Plaintiff's February 26, 2021 testimony that she needed to use the bathroom "[a]bout two to three times per hour" and is in the bathroom for "five to ten minutes" each time and "[s]ometimes longer")), but also the ALJ's RFC finding that Plaintiff's "need to use the restroom can be accommodated by the 15 minute morning and afternoon breaks and the 30 minute lunch period and two additional 5 minute bathroom breaks in an 8 hour work day," (R. 19). Indeed, the vocational expert testified that an individual who would "need to use the restroom at will for up to 10 minutes at a time . . . five to 10 times per day" would not be able to do any past or other work. (R. 62). Further, as Defendant correctly states, it is not the Court's role to reweigh the evidence. (Dkt. No. 11, at 12 (citing *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence."))). Accordingly, remand is required. *See, e.g.*, *Conyers v. Comm'r of Soc. Sec.*, No. 17-cv-5126, 2019 WL 1122952, at *21, 2019 U.S. Dist. LEXIS 39919, at *60

(S.D.N.Y. Mar. 12, 2019) (remanding where "the ALJ's factual errors were not trivial, and affected numerous aspects of his analysis, including the weight he gave to the medical opinion evidence before him, his evaluation of plaintiff's credibility, and his formulation of plaintiff's RFC"); *Hanes v. Comm'r of Soc. Sec.*, No. 11-cv-1991, 2012 WL 4060759, at *14, 2012 U.S. Dist. LEXIS 131680, at *37 (E.D.N.Y. Sept. 14, 2012) (finding that factual "inaccuracies suggest a potential misunderstanding of the record" that "should be resolved upon remand," explaining that the court was "unable to conclude that the overlooked information would not materially impact the ALJ's decision and, if in fact the ALJ reaches the same conclusion, the ALJ will need to address this information in applying the requisite factors").

V.      CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Commissioner's decision is **REVERSED** and this action is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: March 13, 2023
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge